UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROGER STUBL,

        Plaintiff,                       Case No. 2:07-cv-252

v.                                            Honorable R. Allan Edgar

DEAN CAROLYN et al.,

        Defendants.
_____/

## **OPINION**

        Plaintiff Roger Stubl, a former Michigan inmate, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Dentist Dean Carolyn, Chippewa Correctional Facility (URF) Dentist Dr. (Unknown) Owen (named as Owens in Plaintiff's complaint), Marquette Branch Prison (MBP) Dentist Pam Austin, and Dental Assistant Joanne D. Clark.

        Plaintiff's complaint alleges that in December 2006, while incarcerated at the Chippewa Correctional Facility (URF), Plaintiff underwent dental surgery. Plaintiff developed an oral infection. After x-rays were taken, the decision was made to remove all of Plaintiff's teeth. Plaintiff was transferred to the Marquette Branch Prison (MBP), where the dental extractions were performed. Plaintiff's gums failed to heal properly, and for two months he suffered from the pain. Plaintiff eventually removed broken teeth particles from the lower left section of his gums. He informed the dental assistant that he had removed the particles from his gums and wrote several complaint letters. Because Plaintiff's gums were deformed as a result of the unsatisfactory extractions, the upper and lower dentures he received did not fit properly. Although the dentures were returned two or three

times, they were never successfully corrected. The dentist trimmed the dentures and ground their surface, to no avail. The ill-fitting dentures interfere with Plaintiff's speech and ability to eat. By letter directed to Dean Carolyn, the regional director at MBP, Plaintiff complained of the situation, and advised that he may file a malpractice claim. Dean Carolyn did not respond.

Plaintiff claims that defendants' actions violated his rights under the Eighth Amendment to the United States Constitution. For relief, Plaintiff seeks damages of $350,000, cosmetic surgery to repair his deformed gums, and new dentures.

Plaintiff complaint was initially dismissed by the court on January 5, 2009, for failing to state a claim. Plaintiff subsequently filed an appeal, which was granted, in part, by the Sixth Circuit. In its opinion, the Sixth Circuit affirmed this court's dismissal of Defendant Carolyn, but vacated the order with regard to the remaining Defendants.

Presently before the Court is the Motion for Summary Judgment filed by Defendants Owen and Clarke pursuant to Fed. R. Civ. P. 56. Plaintiff was granted an extension of time in which to file a response, but has failed to file such a response. Because the time for responding to the motion for summary judgment has elapsed, the matter is ready for decision. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus.*

*& Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Initially, Defendant Owen claims that he is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate

4

submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendant Owen asserts that Plaintiff failed to name him in any grievance related to the allegations in the instant complaint. In support of this assertion, Defendant offers the affidavit of Richard B. Stapleton, Administrator in the Office of Legal Affairs at the MDOC. Stapleton attests that he searched the records relevant to step III grievance appeals filed by Plaintiff, and that three grievances were filed relating to the allegations in the instant complaint: AMF-2007-02-0468-12a3, MBP-2007-01-0141-28e, and AMF-2007-06-02123-12a1. In addition, Stapleton attests that Defendant Owen was not named in any of these grievances. (Defendants' Exhibit 6, ¶ 13.) Defendant Owen also offers copies of grievance records for numbers AMF-2007-02-0468-12a3,

5

MBP-2007-01-0141-28e, and AMF-2007-06-02123-12a1, which support Plaintiff's assertion that he did not name Defendant Owen in any of the grievances. (Defendants' Exhibits 5, 7, and 8.) Accordingly, the court concludes that Defendant Owen is entitled to summary judgment for failure to exhaust administrative remedies.

Furthermore, Defendants Owen and Clarke assert that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims because they were not deliberately indifferent to Plaintiff's serious medical need. Plaintiff claims that Defendants violated the Eighth Amendment by denying him proper dental care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

7

In support of their motion for summary judgment, Defendants offer a copy of Plaintiff's dental records, as well as their affidavits. Plaintiff alleges that Defendant Owen is responsible for injuries incurred to his lower gums in an operation which was performed on December 15, 2006. However, Plaintiff's dental records show no such procedure was performed on December 15, 2006. In addition, the record shows that Plaintiff's dental providers during December of 2006 were Defendant Austin and Karin Brich, RDH. (Defendants' Exhibit 1, p. 8.)

A review of the record indicates that Defendant Owen performed dental surgery on Plaintiff on March 9, 2006, extracting four upper teeth. There is no indication in the record that there were any complications during surgery and Defendant Owen attests that he would have noted any complications in the record. (Defendants' Exhibit 1, p. 1, and Exhibit 2, ¶ 2.) On March 23, 2006, Defendant Owen removed the sutures from Plaintiff's gums and noted that Plaintiff's healing was within the normal limits. (Defendants' Exhibit 1, pp. 1-2.) As noted by Defendants, Plaintiff's complaint indicates that he suffered injuries to his lower gums. Because the only surgery performed by Defendant Owen was to extract Plaintiff's upper teeth, he had no involvement with the asserted injury. Moreover, Defendant Owen did not perform any denture work for Plaintiff and had no further contact with Plaintiff following Plaintiff's transfer to MBP on June 23, 2006. (Defendants' Exhibit 2, ¶¶ 5-6.) The court concludes that the record does not support Plaintiff's claim that he was treated with deliberate indifference by Defendant Owen.

The record shows that Defendant Austin performed dental surgery on Plaintiff on August 21, 2006, extracting five lower teeth. Defendant Clarke assisted Defendant Austin with the surgery. No complications occurred during the surgery. (Defendants' Exhibit 1, p. 4, Exhibit 2, ¶ 4, and Exhibit 4, ¶ 2.) Plaintiff complained of pain following surgery and was prescribed pain medication, dry socket paste, and hurricane topical ointment by Defendant Austin. (Defendants'

Exhibit 1, pp. 4-6, Exhibit 4, ¶ 3.) On August 31, 2006, Plaintiff had a post-operative appointment with Defendant Austin, who noted that Plaintiff was healing well. (Defendants' Exhibit 1, pp. 4-6, and Exhibit 4, ¶ 4.)

Plaintiff went through the fitting process for dentures from September to November of 2006. Defendant Clarke entered notes in Plaintiff's record when he requested information about the progress of his dentures. Plaintiff received the dentures on April 5, 2007. (Defendants' Exhibit 1, pp. 6-11, and Exhibit 4, ¶ 5.) The dental record shows that prior to receiving his dentures, Plaintiff kited frequently, asking to have his teeth set in a specific manner in the new dentures. Plaintiff was told that lab instructions were to be at Defendant Austin's discretion. (Defendants' Exhibit 1, pp. 9-10.)

On July 3, 2007, Plaintiff kited that his dentures did not fit properly and was seen by Dr. Bruce MacDonald, who adjusted Plaintiff's dentures and noted that Plaintiff had not contacted the dental clinic for over three months after delivery of his new dentures. (Defendants' Exhibit 1, p. 11.) On November 18, 2008, Plaintiff kited dental, stating that the finish was coming off his dentures and that they would have to be recoated. On January 5, 2009, Plaintiff sent a kite complaining that his dentures were ill-fitting and that the finish was coming off. On January 11, 2007, Plaintiff sent a kite addressed to Defendants Austin and Clarke, requesting his dental records and stating that he had been injured by dental employees at Jackson, URF, and MBP during his dental surgeries. Plaintiff asserted that he had removed broken teeth in gum area days after surgery. Plaintiff was advised to request his records from Medical Records Supervisor Ambra Ehle. On January 12, 2009, Plaintiff was seen by Dr. James Stanchina, DDS, who observed that Plaintiff's upper dentures were somewhat loose. Dr. Stanchina informed Plaintiff that they could be relined, but that much improvement was guarded and that he would have to do without his dentures for

9

approximately 6 weeks. Plaintiff was instructed to re-kite if he wanted a reline to be done. On January 14, 2009, Plaintiff requested to have his upper dentures redone, and on February 17, 2009, Plaintiff requested prosthetics and was placed on the list. (Defendants' Exhibit 1, pp. 12, 15.)

On June 2, 2009, Plaintiff's dentures were adjusted by Dr. MacDonald, and Plaintiff stated that he would like to "go ahead with reline." (Defendants' Exhibit 1, p. 12.) On August 28, 2009, Plaintiff kited that he was having difficulty eating and talking because of his ill-fitting dentures. Defendant Clarke placed Plaintiff on the list to have his dentures evaluated. On November 25, 2009, Plaintiff was evaluated by Dental Aide Jacquelyn Perry. (Defendants Exhibit 1, p. 13, and Exhibit 4, ¶ 7.)

A review of the record reveals that Defendant Clarke responded to Plaintiff's requests for treatment, was not responsible for conducting any actual surgery, and was not involved in making Plaintiff's dentures. Instead, Defendant Clarke responded to Plaintiff's questions, referred Plaintiff for appointments and passed information on to the dentists. The court concludes that because Defendant Clarke was not deliberately indifferent to Plaintiff's serious medical need, she is entitled to summary judgment.

Defendants Owen and Clarke alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances

two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants Owen and Clarke are entitled to qualified immunity.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to the motion for summary judgment filed by Defendants Owen and Clarke. Accordingly, the motion for summary judgment filed by Defendants Owen and Clarke (Docket #57) will be granted.

An Order consistent with this Opinion will be entered.


Dated: 3/31/2011  /s/ R. Allan Edgar
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE